2022-1451, 2022-1452

**IN THE**
**UNITED STATES COURT OF APPEALS FOR**
**THE FEDERAL CIRCUIT**

**AXONICS, INC.,**
*Appellant*

v.

**MEDTRONIC, INC.,**
*Appellee*

APPEALS FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD IN IPR NOS. IPR2020-00679 & IPR2020-00715

# APPELLANT AXONICS, INC.'S CORRECTED REPLY BRIEF

Matthew D. Powers
William P. Nelson
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Facsimile: (650) 802-6001

Azra Hadzimehmedovic
Aaron M. Nathan
Samantha Jameson
TENSEGRITY LAW GROUP, LLP
8260 Greensboro Drive, Suite 260
McLean, VA 22102
Telephone: (703) 940-5032
Facsimile: (650) 802-6001

*Counsel for Appellant*
*Axonics, Inc.*

October 27, 2022

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-1451, 2022-1452

**Short Case Caption** Axonics, Inc. v. Medtronic, Inc.

**Filing Party/Entity** Axonics, Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/27/2022

Signature: /s/ Matthew D. Powers

Name: Matthew D. Powers

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Axonics, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Babak Sani, A, Kilpatrick Townsend & Stockton LLP | Naveen Modi, Paul Hastings LLP | A, James Isbester, Kilpatrick Townsend & Stockton LLP |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Medtronic, Inc. et al v. Axonics Modulation Technologies, Inc. Case #: 8:19-cv-02115-DOC-JDE | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ ii

TABLE OF CONTENTS ..............................................................................v

TABLE OF AUTHORITIES .........................................................................vi

I. INTRODUCTION ..............................................................................1

II. ARGUMENT ....................................................................................5

A. Medtronic Fails To Rebut Axonics' Showing That The Board Committed Legal Error In Requiring The Physical Combination Of The References To Be Operable For The Unclaimed Purpose of Trigeminal Nerve Stimulation .........................................................5

B. The FWDs' Finding There Was No Motivation To Combine From The Shared Nature Of The Problem To Be Solved, In The Same Field Of Pertinent Art, Is Not Supported By Substantial Evidence ...16

III. CONCLUSION AND STATEMENT OF RELIEF SOUGHT.....................25

## TABLE OF AUTHORITIES

### Cases

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ........................................................................24

*Adidas AG v. Nike, Inc.*,
963 F.3d 1355 (Fed. Cir. 2020) ........................................................................11

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC,*
825 F.3d 1373 (Fed. Cir. 2016) ........................................................................2, 7, 8

*ClassCo, Inc. v. Apple, Inc.*,
838 F.3d 1214 (Fed. Cir. 2016) ........................................................................12

*Dome Patent L.P. v. Lee,*
799 F.3d 1372 (Fed. Cir. 2015) ........................................................................21, 22

*E.I. du Pont de Nemours & Co. v. Synvina C.V.,*
904 F.3d 996, 1009 (Fed. Cir. 2018) ................................................................2, 14

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ........................................................................12

*In re Gartside,*
203 F.3d 1305 (Fed. Cir. 2000) ........................................................................18

*In Re Gordon*,
733 F.2d 900 (Fed. Cir. 1984) ..........................................................................11

*In re Urbanski* ....................................................................................................13

*In Re Urbanski,*
809 F.3d 1237 (Fed. Cir. 2016) ........................................................................10

*InTouch Techs., Inc. v. VGo Communs., Inc.*,
51 F.3d 1327 (Fed. Cir. 2014) ..........................................................................24

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007)..................................12

*Polygroup Ltd. MCO v. Willis Elec. Co.*,
780 F. App'x 880 (Fed. Cir. 2019)................................................................passim

*Trivascular, Inc. v. Samuels*,
812 F.3d 1056 (Fed. Cir. 2016) ........................................................................11

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) ........................................................................23

# I. INTRODUCTION

Finding itself on the wrong side of the merits, Medtronic's responsive brief runs from Axonics' demonstration of the legal errors and unsupported factual conclusions made by the Board in finding the challenged claims of the 314 and 756 Patents not unpatentable. Rather than confront that demonstration, Medtronic relies on cases that do not rescue the Board's conclusions from reversible error, contends that Axonics waived arguments it indisputably made, and raises matters not at issue on appeal (such as whether there exists objective indicia of non-obviousness). None of it rebuts Axonics' showing that the Board's determination must be reversed.

First, as shown in Axonics' brief, the Board committed clear legal error when it failed to find a motivation to combine from the unmistakable suggestion in Petitioner's primary reference (Young) to modify its single-electrode tined lead "to provide multiple active stimulation sites near the tip" of the lead to "permit greater flexibility in activation of a wider area" of the stimulation site (Appx2410). As Axonics showed, this suggestion would have led a POSITA to modify Young's lead to have multiple electrodes as disclosed in the secondary Gerber reference, thereby achieving the 314 and 756 Patent claims.

The Board's rejection of this motivation to combine was legal error that requires reversal of the Final Written Decisions ("FWDs"), because it is based exclusively on the determination that the resultant physical combination would not

be operable for trigeminal nerve stimulation as discussed in Young – a requirement not recited in the challenged 314 and 756 Patents at all. That is not the law: the test for obviousness asks "whether a 'skilled artisan would have been motivated to combine the teachings of the prior art references to ***achieve the claimed invention***'" – not whether the prior art references would, if physically combined, operate to achieve some unclaimed purpose. *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC,* 825 F.3d 1373, 1381 (Fed. Cir. 2016).

Medtronic's brief never explains why it was not reversible error for the Board to disregard the correct legal standard. Instead, Medtronic contends that "the question on appeal is ***only*** whether substantial evidence supports the Board's determination," MBr., 51, and devotes pages of briefing to presenting that purported evidence, concluding that the Board's "factual finding" of no motivation to combine was "supported by substantial evidence as it [was] based on its evaluation of the reference's teachings and the competing expert testimony. " MBr., 47-50. That misses the point, however: it does not matter what the evidence was, or that the Board credited it, when it did so under the ***wrong legal standard.*** That error requires reversal. *See, e.g, E.I. du Pont de Nemours & Co. v. Synvina C.V.,* 904 F.3d 996, 1009 (Fed. Cir. 2018)("No substantial evidence supports the Board's contrary finding that it made ***under the wrong legal standard***.")

Medtronic next relies on decisions in which the intended purpose of a primary reference was a relevant consideration where, unlike here, there was either no express suggestion to combine, or the primary reference in fact ***taught away*** from a proposed combination. The predictable outcomes of these cases have no relevance here, where the Young reference expressly suggested the combination that would achieve the claimed invention, by teaching that its lead can be improved by adding "multiple active stimulation sites," *i.e.,* electrodes, near the tip of the lead. Appx2410.

None of Medtronic's other attempts to divert attention from the Board's legal error fares any better. Medtronic repeatedly cries waiver, but none has occurred, and Medtronic's arguments to the contrary mischaracterize both the record below and Axonics' opening brief. Medtronic devotes dozens of pages to cataloging what it contends are objective indicia of non-obviousness, describing the claimed invention as "revolutionary" or "revolutionizing" the field no fewer than five times. MBr., 1, 5, 13, 18. Such characterizations are false, since the record demonstrates that all of the purportedly revolutionary benefits of the tined lead of the claims – a minimally invasive procedure, under local anesthesia, in two "stages," with a reduced implantation time, were already known in the art, and had already been achieved with prior art, non-tined leads. *See* Appx5367-5371. More importantly, they are

irrelevant to the question of whether the Board committed legal error requiring reversal – as Medtronic admits, the Board did not even consider them (MBr., 44).

Second, with respect to Axonics' separate showing that the Board erred in rejecting Petitioner's proposed motivation to combine based on the asserted Grounds addressing the same problem, from the same field of pertinent art, as the 314 and 756 Patents, Medtronic again fails to address the most significant problems with the Board's conclusion. For example, Medtronic never attempts to explain how the FWDs' conclusion that the 314 and 756 Patents were narrowly directed to the problem of medical leads for sacral neuromodulation, and that the field of pertinent art was also limited to sacral neuromodulation, can be squared with the fact that the claims themselves are not limited to that field (and the specification supports that breadth). Instead, Medtronic simply repeats the evidence the Board did rely on, in the face of overwhelming evidence that contradicts it, and tells the Court it may look no closer under the "substantial evidence" standard. That is not the law: this Court can and should reverse factual conclusions when, like here, the conclusions are unreasonable in view of the contrary evidence, and are internally inconsistent in any event. *Polygroup Ltd. MCO v. Willis Elec. Co.,* 780 F. App'x 880, 884 (Fed. Cir. 2019)(We "do not regard such internally inconsistent findings as supported by substantial evidence.").

Based on their unrebutted errors, the FWDs' finding that no challenged claims of the 314 Patent and 756 Patent are unpatentable should be reversed, the independent claims should be found unpatentable under at least Ground 1, and the matters should be remanded to the PTAB for findings on the remaining challenged dependent claims, consistent with the Court's reversal.

## II. ARGUMENT

### A. Medtronic Fails To Rebut Axonics' Showing That The Board Committed Legal Error In Requiring The Physical Combination Of The References To Be Operable For The Unclaimed Purpose of Trigeminal Nerve Stimulation

Medtronic's brief is most notable for what it does not contest. For example, it never contends that the Board erred when it determined that the Young, Gerber, and Lindegren references, asserted as Ground 1 of unpatentability for both the 314 and 756 Patents, disclosed every element of the challenged claims. Medtronic also does not dispute that Young unmistakably suggests modifying its lead to provide multiple electrodes, by stating that its single-electrode lead "could be improved to provide multiple active stimulation sites near the tip" of the lead, as Gerber discloses and the 314 and 756 Patent claims recite, because it "***would permit greater flexibility in activation of a wider area***" of the stimulation site. Appx2410. Nor does it dispute that Gerber provides a complementary disclosure of multiple electrodes at the distal end of a lead, specifically for use in sacral nerve stimulation. Appx2430 at 2:4-5 ("current lead design used for sacral nerve stimulation uses 4 electrodes").

As demonstrated in its opening brief, Axonics explained to the Board how Young's express suggestion of adding electrodes would have motivated a POSITA "to look for multiple electrodes that provide greater flexibility for electrode placement," and would guide them to Gerber's complementary disclosure of multiple electrodes at the distal end for sacral nerve stimulation. Appx207, Appx290. *See also* Appx2180-2181, ¶90 (Young's suggestion would motivate a POSITA to look for disclosures of multiple electrodes, "such as Gerber which discloses multiple electrodes at the distal end of the leads for sacral nerve stimulation.").[1]

Nor does Medtronic dispute (at least directly) the fundamental legal principle that demonstrates the Board's error in rejecting Young's suggestion to modify its tined lead to add the multiple electrodes, at the distal end, of Gerber to achieve the claimed invention of the 314 and 756 Patents. The Board rejected that explicit suggestion to combine on the basis that the resulting physical combination of the two references would no longer be capable of operating as intended for trigeminal

[1] Medtronic inexplicably contends that Axonics relies on "previously unidentified testimony" from its expert for this contention regarding motivation to combine, such that "this testimony and corresponding argument" are somehow waived. MBr., 56-57. None of these arguments are new; they were extensively presented to the Board. *See, e.g.,* Appx206-208, Appx289-292 (Petitions); Appx1305 (Hearing Transcript). With respect to specifically cited paragraphs from the supporting declaration of Axonics' expert, Axonics' Petition for the 756 Patent (Appx289-292) cites specifically to ¶104 of Axonics' expert declaration (Appx2293-2294), which is identical to ¶90 of the 314 Patent Petition (Appx2180–2181) – the primary basis for Medtronic's unsupported contention that the testimony was "previously unidentified."

stimulation as described in Young. Appx34-35, Appx100-103. But the standard is clear: the "'test for obviousness is ***not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference***,' but rather whether 'a skilled artisan would have been motivated to combine the teachings of the prior art references ***to achieve the claimed invention***.'"*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC,* 825 F.3d 1373, 1381 (Fed. Cir. 2016) (internal citations omitted). *See also Polygroup Ltd. MCO v. Willis Elec. Co.,* 780 F. App'x 880, 884 (Fed. Cir. 2019) (confirming that "prior art inventions need not be physically combinable to render a claim obvious."). Medtronic never contends that this legal principle is incorrect or incomplete, but none of the arguments it does make can be squared with it.

The *Allied Erecting* test highlights the error of the Board's conclusion that there can be no motivation to combine where the physical combination of two embodiments would render that combination unsuitable for a purpose or function not found in the challenged claims, such as the intended function of a primary reference. That is because it asks the different question of whether a POSITA would have been motivated to combine references to achieve ***the claimed invention*** – an inquiry not deterred by the possibility that the combination suggested would "not only change[] [the primary reference's] principle of operation, ***but render[] the***

***device inoperable as a result*.**" *Allied Erecting,* 825 F.3d at 1380. This conclusion is found again and again in the decisions of this Court.

In *Allied Erecting,* for example, like here, the Board rejected a motivation to combine the asserted references, because the combination would, *inter alia,* "***render[] the device inoperable as a result*.**" *Allied Erecting,* 825 F.3d at 1380. That is the wrong standard, the Court confirmed, because "[a] given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine," and the evidence showed a POSITA would have been motivated to modify the primary reference to provide the benefits of the wider range of motion disclosed in the secondary reference, even if it "may impede the quick change functionality" which was the central purpose of the primary reference. *Id.* at 1377, 1381. Medtronic tries but fails to distinguish *Allied Erecting* on the basis that the Court found, later in its opinion, that a "POSITA ***could*** modify the references "*without impacting the quick change functionality*." M.Br., 53-54 (citing *Allied Erecting*, 825 F.3d at 1381). That "in any event" dicta does nothing to change *Allied Erecting's* unmistakable holding that, even if the suggested combination did impede the functionality of the primary reference, it need not matter to a motivation to combine.

*Polygroup* is also instructive. There, the Board rejected a motivation to combine because the proposed combination of one connector type disclosed in a

primary reference with another in a secondary reference would create the result that "one plug may be pushed further back into the tube . . .and no longer be ***properly located*** to permit the electrical connection," just as the Board here based its rejection on the conclusion that adding Gerber's electrodes to Young's lead would result in the tines no longer being properly located to provide fixation in the trigeminal region. Appx33, Appx35; Appx101, Appx103 (finding that combination of Young's lead with the multiple electrodes of Gerber would move Young's tines out of the cistern area of the trigeminal nerve into an area of "hard tissue" where they could not anchor.). 780 F. App'x 880, 883 (Fed. Cir. 2019). The Court reversed this finding, again confirming that "prior art inventions need not be physically combinable to render a claim obvious." *Id.* at 884.

There is no merit to Medtronic's other efforts to distinguish or cabin this Court's decisions that demonstrate the Board's error. Medtronic says that Axonics has misread *In Re Urbanski*, because "this Court did not reject a patent owner's contention that 'a POSITA would not be motivated to combine the asserted references because the combination would have rendered the modified process inoperable [for] the primary reference's intended purpose'" MBr., 54. Yet that is exactly what happened in that case: there, the Court indisputably found that "one of ordinary skill would have been motivated to pursue the desirable properties taught by [the secondary reference], ***even if that meant foregoing the benefit*** taught by [the

primary reference].” 809 F.3d 1237, 1244 (Fed. Cir. 2016). The same is true here – one of ordinary skill in the art would have been motivated by Young’s suggestion to add multiple electrodes to the lead to combine its lead with the multiple electrodes for sacral neuromodulation disclosed by Gerber, “***even if that meant foregoing the benefit*** taught by” Young concerning trigeminal stimulation. And while *In Re Urbanski* does state that “[i]f references taken in combination would produce a ‘seemingly inoperative device,’ ... such references teach away from the combination” (MBr., 54), that has nothing to do with the evidence here, which showed that the resultant combination would be operative, but not for the unclaimed purpose of trigeminal stimulation.

Like the FWDs, Medtronic relies on distinguishable decisions, made on different facts, to contend that “it is well established that there cannot be a motivation to combine when the proposed modification in order to arrive at the claim would render the primary reference inoperable for its intended purpose.” MBr., 52-53. As a preliminary matter, none of its cited decisions actually hold or state that as a principle; that is simply Medtronic’s incorrect characterization of the decisions. In *Trivascular, Inc. v. Samuels*, the turning point of the decision had nothing to do with inoperability; instead, this Court found that the primary reference ***taught away*** from the proposed combination, since the tissue-penetrating barbs that would be replaced with non-penetrating protrusions were “the primary objective of the reference.”

*Trivascular, Inc. v. Samuels,* 812 F.3d 1056, 1069 (Fed. Cir. 2016) As such, the Court's affirmation that there was no motivation to combine these references under those facts has no bearing on this case, where Young explicitly suggests that its primary objective – a lead that provides therapeutic stimulation – "could be ***improved*** to provide multiple active stimulation sites near the tip." Appx2410. In *In Re Gordon,* the Court found the claim nonobvious because the "mere fact that the prior art could be so modified would not have made the modification obvious ***unless the prior art suggested the desirability of the modification***," given that the modification would cause the device to no longer operate, and the prior art provided no such suggestion. 733 F.2d 900, 902 (Fed. Cir. 1984). Here, Young expressly suggests the desirability of adding multiple active stimulation sites near the tip of the lead. *Adidas AG v. Nike, Inc.*, is another decision lacking (unlike here) an express suggestion to combine. There, the Court observed that the only purported "suggestion" was a general observation "concerning cost reduction and garment production" 963 F.3d 1355, 1359 (Fed. Cir. 2020)– a far cry from Young's express teaching to improve its lead by adding multiple electrodes, which would have led one of skill in the art to Gerber's complementary disclosure of multiple electrodes for sacral neuromodulation.

None of these references would require, contrary to this Court's holdings in *Allied Erecting, Polygroup,* and *In Re Urbanski,* that Young's lead, perfunctorily

grafted with Gerber's electrodes, continue to operate as intended for trigeminal stimulation in order to motivate a POSITA to combine them. Instead, under the test set out in these decisions, the correct question is whether a POSITA would have been motivated by Young's suggestion of multiple electrodes, and Gerber's complementary disclosure of multiple electrodes at the distal end of the lead for sacral neuromodulation, to combine the ***teachings*** of the prior art references to achieve the claimed invention. As Axonics has explained, in this analysis, the POSITA is not assumed to mindlessly graft two references together, as Medtronic and the FWDs suggest. Instead, "'[a] person of ordinary skill is also a person of ordinary creativity, not an automaton,' so the fact that it would take some creativity to carry out the combination does not defeat a finding of obviousness." *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1343 (Fed. Cir. 2020)(quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007)). *See also ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir. 2016) ("The rationale of *KSR* does not support [the] theory that a person of ordinary skill can only perform combinations of a puzzle element A with a perfectly fitting puzzle element B.").

That is exactly what Petitioners demonstrated under the correct standard, as Axonics explained in its opening brief. *See* Axonics Br., 45-47. Accordingly, Young's suggestion would motivate a POSITA to exercise their ordinary creativity

to adapt Gerber's multiple electrodes at the distal end for sacral neuromodulation to operate with Young's lead to achieve the claimed inventions of the 314 and 756 Patents, "even if that meant foregoing the benefit" taught by Young of trigeminal stimulation. *See In re Urbanski,* 809 F.3d at 1244. As Axonics has explained, the Board erred here because it did not apply the proper test for obviousness, which asks whether a "skilled artisan would have been motivated to combine the teachings of the prior art references ***to achieve the claimed invention***": not, *e.g.,* whether the physical combination would still operate to accomplish some purpose not found in the claims, such as trigeminal stimulation. That error remains unrebutted after Medtronic's brief.

Despite the Board's failure to apply the correct ***legal standard*** in finding a lack of motivation to combine, Medtronic insupportably contends that there is only a factual determination to review here: "the question on appeal is ***only*** whether substantial evidence supports the Board's determination," MBr., 51. *See also* MBr., 45-46 (asserting the "'presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact' and therefore reviewed for substantial evidence"). Medtronic's brief insists that the Board's "factual finding" of no motivation to combine was "supported by substantial evidence as it [was] based on its evaluation of the reference's teachings and the competing expert testimony" (MBr., 50) and spends many pages presenting the evidence it purports

negates a motivation to combine. MBr., 47-50. Medtronic's presentation is incomplete, and furthermore fails to provide substantial evidence for a finding of lack of motivation to combine, in the face of the evidence below and discussed in Axonics' brief. *See* Axonics Br. at 11-26. More importantly, it is irrelevant. The Board applied the wrong legal standard in its analysis, and assessed all the evidence, for and against a motivation to combine, through the lens of that wrong standard. It is fundamental, black letter law that such an error requires reversal. *See, e.g, E.I. du Pont de Nemours & Co. v. Synvina C.V.,* 904 F.3d 996, 1009 (Fed. Cir. 2018)("No substantial evidence supports the Board's contrary finding that it made ***under the wrong legal standard***.")

In a further attempt to avoid the merits, Medtronic contends that Axonics somehow waived or forfeited any ability to contend that the Board's error requires reversal. Specifically, Medtronic pretends that Axonics failed to address (except in a footnote), the Board's statement, in the course of finding no motivation to combine Young with Gerber because the resultant combination would not be operable for trigeminal stimulation, that "Young discloses multiple active sites *near* the tip, not at the tip or distal to the tines." MBr., 37, 49-51. The record disproves Medtronic's assertions. First, Medtronic incorrectly contends that the Board's statement regarding Young's disclosure of multiple electrodes "near the tip, not at the tip or distal to the tines" is an ***independent*** factual finding, sufficient alone to support the

Board's conclusion that there was no motivation to combine. *See,* MBr., 48 ("The Board found this rationale insufficient for ***two independently sufficient*** reasons."). That is not so. This statement is merely one subsidiary part of, and inseparable from, the Board's erroneous conclusion that "Young's disclosure of improving its lead to provide multiple active stimulation sites near the tip would not have suggested to a POSITA to modify Young's lead to include a plurality of electrodes distal to all of the tines because such an arrangement would ***not be feasible in the trigeminal nerve region***." Appx35, Appx103. In its briefing, Axonics has indisputably, and comprehensively, shown that conclusion by the Board to be legal error. Further demonstrating the intertwined nature of these statements, Medtronic's quoted statement that "Young discloses multiple active sites *near* the tip" is part of the ***same paragraph*** in the FWDs, for which the Board's preceding statement regarding feasibility ***"in the trigeminal nerve region"*** is the introduction. *Id.* And the Board's specific conclusion on this point concerning Young's disclosure of "multiple active sites near the tip" explicitly incorporates, and is ***based upon,*** its finding that the combination of Young's lead with Gerber's electrodes "would not be feasible in the trigeminal nerve region:"

> In view of Young simply disclosing multiple active sites near the tip, without any relation to the tines, ***and Dr. Slavin's testimony that a POSITA would not understand Young to suggest multiple electrodes distal to all of the tines,*** Petitioner has not persuaded us that Young's disclosure of improving its lead to provide multiple active stimulation sites near the tip would have suggested to a POSITA to modify Young's

> lead to include a plurality of electrodes distal to all of the tines. Appx35, Appx103

The bolded language in this quotation concerning "Dr. Slavin's testimony" is a direct reference to the Board's statement, one sentence earlier, that it "credit[s] Dr. Slavin's testimony that Young's disclosure of improving its lead to provide multiple active stimulation sites near the tip would not have suggested to a POSITA to modify Young's lead to include a ***plurality of electrodes distal to all of the tines*** because such an arrangement ***would not be feasible*** in the trigeminal nerve region." *Id.* They are one and the same finding, not separate and independent bases. That is why footnote 6 at page 50 of Axonics' brief begins with "For the same reason . . .": both conclusions were made under the Board's erroneous requirement that that there can be no motivation to combine where the physical combination of two embodiments would render that combination unsuitable for a purpose or function not found in the claims. Second, and for the same reasons, none of Medtronic's cases stating that "arguments made only in a footnote" are applicable here, because Axonics' demonstration that the Board applied an erroneous standard to this conclusion were not made in a footnote; they are throughout the brief.

### B. The FWDs' Finding There Was No Motivation To Combine From The Shared Nature Of The Problem To Be Solved, In The Same Field Of Pertinent Art, Is Not Supported By Substantial Evidence

Medtronic offers only two arguments to rebut Axonics' showing that the FWDs erred in rejecting Petitioner's contention that a POSITA would be motivated

to combine Young, Gerber, Lindegren and Hauser to achieve the challenged claims because each of the references addressed the same problem as the 314 and 756 Patents of limiting implantable lead migration while providing adequate nerve stimulation, and are art from within the same field as the 314 and 756 Patents. Neither has merit.

First, Medtronic assures the Court that there is substantial evidence to support the FWDs' finding that the references were directed to different problems, each limited to a specific anatomical location, and were thus outside the field of pertinent art for a POSITA, so it need not consider the issue further. MBr., 57-63. Medtronic points to its preferred evidence – specifically, a statement in the specification that there "remains a need in the art for a permanently implantable electrical sacral nerve stimulation lead" – avers (incorrectly) that even Axonics has agreed that this is the problem addressed by the 314 and 756 Patents (MBr., 58-59), and then declares "it is not this Court's job" to "weigh the relative strength of Axonics' evidence against evidence of the Board." MBr., 63.

There are many problems with Medtronic's argument. Starting with its prescription to the Court regarding its "job," Medtronic is wrong that, having identified evidence in its responsive brief it contends supports the FWDs' factual determination, this puts an end to the Court's "substantial evidence" inquiry. Were that the case, the Court could never review the Board's factual determinations, so

long as the appellee can point to anything in the record to support the determination, no matter how unreasonable it is in view of the evidence. Instead, substantial evidence review asks "whether a reasonable fact finder could have arrived at the agency's decision" and requires examination of the "record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *In re Gartside,* 203 F.3d 1305, 1312 (Fed. Cir. 2000). Determinations that are unreasonable in view of the record as a whole, including internally inconsistent findings, will not be found to be supported by substantial evidence. *Polygroup Ltd. MCO v. Willis Elec. Co.,* 780 F. App'x 880, 884 (Fed. Cir. 2019).

As Axonics demonstrated in its opening brief, under this test, the FWDs' conclusion that the problems addressed by the 314 and 756 Patents were limited to sacral neuromodulation are manifestly unreasonable. Those findings either ignore or brush aside the great weight of evidence from the 314 and 756 Patents that defines the problems they address broadly as limiting implantable lead migration while providing adequate nerve stimulation at a site in the body – just as did the asserted prior art references. This evidence includes: 1) the 314 and 756 Patent's "summary of the ***invention",*** which clearly states that the patents address "the problems ***associated with implanting and maintaining electrical leads in body tissue, particularly muscle tissue to maintain one or more lead electrode in relation to a particular body site***," (Appx152 at 5:48-53), and further states that sacral

neuromodulation is merely a "preferred embodiment" (Appx152 at 5:53-59); 2) the broad scope of the 314 and 756 Patent claims, which do not reference sacral neuromodulation at all; 3) the specification's disclosure of intended uses for its disclosed invention outside of sacral neuromodulation, such as the stomach or the anus (Appx156, 13:32-39); and 4) the 314 and 756 Patents' own "Description of ***Related Art***", which discusses implantable medical lead implementations not only in connection with sacral nerves (Appx150-151, 1:46-4:23), but also in connection with many other types of body tissue, including the heart and the spine (Axonics Br., 31-41).

Medtronic addresses this evidence in passing, or not at all. Nowhere in its brief, for example, does it explain how the Board's conclusion that the problem addressed by the 314 and 756 Patents is limited to sacral neuromodulation can be squared with the fact that the claims are not so limited. None of the 314 or 756 Patent Claims limit the claimed "implantable medical lead," or its implantation, to a particular site in the body or particular set of nerves. Medtronic has no answer as to how this can be so, if the problem addressed by the invention is sacral neuromodulation. Nor does Medtronic attempt to defend or explain the Board's inconsistent findings concerning the problems addressed by the 314 and 756 Patents: while the FWDs adopt a narrow formulation limited to sacral neuromodulation to find no motivation to combine, elsewhere, the FWDs state that "[t]he invention of

the ’314 patent “provides a solution to the ***problems associated with implanting and maintaining electrical leads in body tissue, particularly muscle tissue to maintain one or more lead electrode in relation to a particular body site***, through use of minimally invasive implantation techniques” - just as Axonics contends. Appx4. *See also* Appx64 (same description of the problem solved by the 756 Patent). This Court “do[es] not regard such internally inconsistent findings as supported by substantial evidence,” *Polygroup Ltd. MCO v. Willis Elec. Co.,* 780 F. App'x 880, 884 (Fed. Cir. 2019), and Medtronic provides no reason the Court should not proceed in the same manner here.

Nor is there any merit to Medtronic’s contention that Axonics somehow has agreed that the problem addressed by the 314 and 756 Patents is limited to sacral neuromodulation. MBr., 59. Medtronic points to statements in Axonics’ petitions and expert declarations that cite to Meditronic’s preferred specification section that include sacral neurodulation as a description of the “problem,” but this is no more than a misleading sleight-of-hand. *Id.* Those statements in Axonics’ petitions and elsewhere also cite directly to the patents’ “summary of the invention,” which states that the problem they address is the broad one identified by Axonics:

> The present invention recognizes and provides a solution to ***the problems associated with implanting and maintaining electrical leads in body tissue, particularly muscle tissue to maintain one or more lead electrode in relation to a particular body site***, through use of minimally invasive implantation techniques. Appx152, 5:48-53 (314 Patent); Appx170, 5:33-38 (756 Patent).

*See* 715 Petition (Appx266, citing 5:33-38 of the 756 Patent); Axonics' Expert Declaration (Appx2258, citing 5:33-38 of the 756 Patent); Axonics' Expert Declaration (Appx2150–2151, citing 5:48-53 of the 314 Patent).

In short, the evidence before the Board overwhelmingly demonstrates that it erred in limiting the problem addressed by the 314 and 756 Patents to sacral neuromodulation, in a narrow range of pertinent art. Had the Board adopted the broader formulation supported by the evidence, the inevitable conclusion is that the shared nature of this problem would itself provide a motivation to combine, and a POSITA would "look to the designs (and materials) of previously commercially-approved products for application in a new area of the body" Appx2861-2862, ¶31. *Dome Patent L.P. v. Lee,* 799 F.3d 1372, 1380 (Fed. Cir. 2015).

Second, Medtronic faults Axonics for purportedly failing "to supply *any* reasoning in its Petitions as to why lead migration or inclusion as an implantable medical lead would have motivated a POSITA to modify Young's trigeminal nerve root stimulation lead based on Gerber's SNM lead and Lindegren's, Hauser's, or Akerström's various cardiac leads and would result in the particular claimed arrangement of electrodes and tines." MBr., 64. Medtronic's argument is contradicted by the law, and the record below.

Before the Board, Axonics contended that the shared nature of the problem of implanting and maintaining electrical leads in body tissue would have provided

ample motivation to combine the references, and one of ordinary skill in the pertinent art, also broadly defined as the prior art requires, would have known to adapt Gerber's multiple electrodes for sacral neuromodulation to operate with Young's lead to achieve the claimed inventions of the 314 and 756 Patents. The law of obviousness explicitly recognizes that motivation to combine may be found from such circumstances: "evidence of a motivation to combine need not be found in the prior art references themselves, but rather may be found in 'the ***knowledge of one of ordinary skill in the art***, or, in some cases, ***from the nature of the problem to be solved.'"*** *Polygroup Ltd. MCO v. Willis Elec. Co.,* 780 F. App'x 880, 884 (Fed. Cir. 2019) (remanding to Board because it "failed to explain its decision to discount Polygroup's evidence concerning the knowledge and skill of a POSITA and failed to consider the nature of the problem when analyzing the sufficiency of the proposed rationales."). *See, also Dome Patent L.P. v. Lee,* 799 F.3d 1372, 1380 (Fed. Cir. 2015) (finding motivation to combine from shared problem of oxygen permeability in contact lenses).

Nor did Axonics fail to explain with specificity "why a POSITA would have selected *particular* teachings of the *particular* references such that it would have resulted *in the particular arrangement claimed,"* as Medtronic contends. MBr., 64-65. As Axonics explained in its opening brief:

> Here, Petitioners explained that the 314 and 756 Patents, in the specification's own words, addressed "problems associated with

> implanting and maintaining electrical leads in body tissue, particularly muscle tissue to maintain one or more lead electrode in relation to a particular body site, through use of minimally invasive implantation techniques." Appx152 at 5:48-53. *See* Appx206, Appx226, Appx290. Petitioners further explained that the references identified for each Ground addressed the same problem of implanting and maintaining electrical leads in body tissue; each was simply an instance of that general problem, as applied at a "particular body site" as the 314 and 756 Patents state. Appx201-208, (314 Patent - Young, Gerber, and Lindegren); Appx224-227 (314 Patent - Hauser); Appx282-292 (756 Patent - Young, Gerber, Lindegren, Akerstrom); Appx308-310 (756 Patent – Hauser). Petitioners further explained that, given the shared problem of medical lead implantation, "it is not surprising and actually obvious to a POSITA to look to the designs (and materials) of previously commercially-approved products for application in a new area of the body." Appx2861-2862, ¶31. For example, modifications of Young to have additional electrodes in the distal direction from the tines would have been "applications of a known technique to a piece of prior art ready for the improvement," because it simply "arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement." Appx2183, ¶94. *See KSR*, 550 U.S. at 417. Accordingly, a POSITA would have been motivated to combine these references that addressed the same problem, to achieve the claimed inventions. See Appx206, Appx226, Appx290, Appx310.

Axonics Br., 31-33. Medtronic never addresses this showing, or explains with particularity why it provides insufficient motivation to combine. There is only Medtronic's say-so that it does not. And none of its cases show, or even suggest, that Axonics' articulation of this motivation to combine is insufficient. *WBIP, LLC v. Kohler Co.* concerned whether objective indicia of nonobviousness demonstrated a lack of motivation to combine – not at issue here. 829 F.3d 1317, 1337 (Fed. Cir. 2016). *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.,* concerned an entirely

generic motivation to combine, *i.e., "*you wanted to build something better," or "a system that was more efficient, cheaper, or you wanted a system that had more features, makes it more attractive to your customers, because by combining these two things you could do something new that hadn't been able to do before." 694 F.3d 1312, 1328 (Fed. Cir. 2012). That has nothing to do with Axonics' showing that the problem of implanting and maintaining electrical leads in body tissue would have motivated a POSITA to look to the disclosures of references addressing the very same problem. And in *InTouch Techs., Inc. v. VGo Communs., Inc.,* the motivation to combine evidence "consisted of conclusory references to [expert's] belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so." 751 F.3d 1327, 1352 (Fed. Cir. 2014). In contrast, Axonics explained exactly why the shared nature of the problem would motivate a POSITA to look "to the designs (and materials) of previously commercially-approved products for application in a new area of the body," such as Gerber's multiple electrodes for use with Young's tined lead.

Accordingly, the FWDs erred in their failure to credit Petitioner's showing that a POSITA would be motivated to combine Young, Gerber, Lindegren and Hauser to achieve the challenged claims because each of the references addressed the same problem of limiting implantable lead migration while providing adequate

nerve stimulation, and within the same field of pertinent art as the 314 and 756 Patents.

## III. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, the Court should reverse the Patent Trial and Appeal Board's determination that Claims 1, 2, 4, 7, 10-12, 14 and 18-24 of U.S. Patent No. 8,626.314 B2 are unpatentable under 35 U.S.C. § 103 on Grounds 1 and 2, and Claims 1, 2, 5, 7, 13-15 and 18 of U.S. Patent No. 8,036,756 B2 are unpatentable on Ground 1 under 35 U.S.C. § 103.

Dated: October 27, 2022

Respectfully submitted,

*/s/ Matthew D. Powers*

Matthew D. Powers
William P. Nelson
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, California 94065
Telephone: (650) 802-6000
Facsimile: (650) 802-6001

Azra Hadzimehmedovic
Aaron M. Nathan
Samantha Jameson
TENSEGRITY LAW GROUP, LLP
8260 Greensboro Drive, Suite 260
McLean, VA 22102
Telephone: (703) 940-5032
Facsimile: (650) 802-6001

*Counsel for Appellant Axonics, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-1451, 2022-1452

**Short Case Caption:** Axonics, Inc. v. Medtronic, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,096 words.

- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.

- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 10/27/2022

Signature: /s/ Matthew D. Powers

Name: Matthew D. Powers